**NYMPHE STEAMSHIP COMPANY,**
**Libellant, Appellant,**

v.

**ATLANTIC AND GULF GRAIN STEVE-**
**DORING ASSOCIATES, Respondent,**
**Appellee.**

**No. 6948.**

United States Court of Appeals
First Circuit.

Oct. 20, 1967.

Hiller B. Zobel, Boston, Mass., with whom Robert J. Hallisey and Bingham, Dana & Gould, Boston, Mass., were on brief, for appellant.

Leo F. Glynn, Boston, Mass., for appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

McENTEE, Circuit Judge.

This indemnity suit arose out of an accident that occurred aboard libelant's

ship while the respondent stevedore was loading the ship at East Boston. As a result a longshoreman, employed by the stevedore, was injured. He sued the shipowner in Massachusetts Superior Court alleging negligence and unseaworthiness. That case was settled and the shipowner now seeks to recover from the stevedore the amount it paid the longshoreman, plus reasonable attorneys' fees and expenses incurred in defending the suit.[1]

After trial on the sole issue of liability the district court, sitting without a jury, found for the stevedore. On appeal the shipowner contends that the district court's findings are clearly erroneous.[2] Consequently we shall review the evidence upon which these findings are based.

The following facts are undisputed. All during the loading operation, which began on March 13, 1963, the shipowner provided access to the ship's deck by means of two wooden ladders. A long, straight ladder extended from the loading pier to the ship's rail or bulwark. Next to that but inside the ship's bulwark was a short, four-step ladder that ran from the rail down to the deck. There were no hooks on this short ladder to secure it to the rail and it had sharply pointed ends where it rested on the steel deck. Both ladders were attended by the crew during the period the stevedore was loading the ship. In the early afternoon of March 15, 1963, one Staffieri, a longshoreman, ascended the long ladder to return to the ship and as he stepped on the short one, both he and the ladder fell to the deck.

At the trial the shipowner contended that Staffieri fell because the short ladder was unlashed and had no handrail, in violation of the Safety and Health Regulations for Longshoring (the Regulations);[3] that since these violations were obvious to anyone looking at this ladder, the stevedore either should have secured the ladder properly, caused the crew to do so, or forbade its employees to use it; that by failing to do any of these things the stevedore breached its warranty of workmanlike service and hence is obligated to indemnify the shipowner.

In support of this theory, the shipowner relied on an admission in the stevedore's answer that Staffieri's injury resulted from a fall from a ladder during the course of the loading; several photographs that the stevedore agreed showed the condition of the ladder at the time of the accident and the Regulations, which it claims are "the Bible" for the stevedore industry.[4] The stevedore directs its defense primarily to the point that it did not have reasonable notice of the hazardous condition of the ladder. It contended that the ladder was effectively lashed by the ship's crew during the two and a half days of heavy use just prior to the accident; that the crew changed the ladder a few minutes before the accident and in doing so failed to secure it satisfactorily at the top and that as a result the ladder did not hold when Staf-

1. The amount of the settlement was $6,250. Libelant also seeks to recover $1,750 for legal fees and expenses but the question of damages was not involved at this stage of the case.

2. It also contends that there was sufficient evidence in the record to require a finding for the shipowner and therefore the judgment entered by the district court should be reversed. In addition, the shipowner appealed from the denial of its post-judgment motion for amendment of the findings, a new trial and/or opening of the judgment for the taking of additional testimony.

3. 29 C.F.R.—Chapter XIII—*Subpart C— Means of Access*
§ 1504.21 *Gangways and other means of access*

\* \* \* \* \*

"(f) When the upper end of the means of access rests on or is flush with the top of the bulwark substantial steps properly secured and equipped with at least one substantial handrail approximately 33 inches in height shall be provided between the top of the bulwark and the deck."

\* \* \* \* \*

4. It also called two longshoremen who were working on the ship at the time of the accident but their testimony as to whether the ladder was lashed at or prior to the time of the accident, for the most part, was conclusory. Staffieri was not called as a witness.

fieri stepped on it. It further contended that Staffieri and a fellow employee had used this ladder to go ashore about twenty minutes before the accident and produced evidence that the ladder had been used without incident some six hundred times during the preceding two and a half days, giving rise to the inference that it was lashed up to the time of the accident. The stevedore also introduced evidence that it was high tide within minutes after Staffieri's return to the ship, requiring the crew to readjust the ladder.[5] From this it contends that it can be reasonably inferred that the crew made this change during the twenty minute interval that Staffieri was away from the ship.[6]

Quite apart from the question of whether the trial court arrived at a justifiable decision in this case, the more immediate question is whether in making its findings the court overlooked or misconceived certain undisputed evidence and admissions and as a result viewed the case as a whole in a light unfavorable to the shipowner. After stating that the shipowner must show (1) that the small ladder was unlashed, (2) that this caused the accident and (3) that the stevedore had actual or constructive notice of this condition, the court made the following observations and findings:

"The evidence does not show that the accident was caused by failure to lash the small ladder. Staffieri was not called as a witness and there was no direct evidence as to how the accident happened. There was no one who actually saw whether the ladder was lashed or not."

Referring to the testimony of a fellow workman that the ladder was unlashed,[7] the court observed that this was merely his conclusion and found:

"It does not follow from this fact that Staffieri fell from the ladder. He may have fallen from some other cause, bringing the ladder down with him. And even if we assume that he fell from the ladder, in the absence of any evidence at all as to the presence or absence of proper lashing, it cannot be assumed that the fall was due to improper lashing rather than some other possible defect in the ladder."

From our reading of the record we think the trial court's doubts and speculation as to how this accident happened and whether the ladder was unlashed were entirely unwarranted. The amended libel alleges and the stevedore's answer admits that on the day in question Staffieri "fell from a ladder and sustained an injury."[8] Hence it was conclusively established without Staffieri's testimony that his injury resulted from a fall from the small ladder and the case was tried on that premise.

5. There was testimony that as the ship deepened under the weight of the cargo and as the tide moved it up and down, the ship's crew took care of the ladder, including any lashings on the ladder and sometimes had to shift it. The shipowner did not dispute that the accident occurred between 2:15 and 2:30 p. m. on March 15, 1963, and that it was high tide in Boston at 2:36 p. m. on that day. It did dispute that the change in tide affected the short ladder which was entirely inside the ship's bulwark. Whether readjusting the long ladder would alter the position of the short one depends, of course, on whether the two were lashed—one to the other.

6. The stevedore also contends that absolute recovery for violation of the Regulations upon which the shipowner relies applies as between shipowner and longshoreman and not as between shipowner and stevedore, particularly where as here the gangway ladder is ship-supplied and ship-tended.

7. This witness testified that he was working on a hatch some distance away; that he did not see the accident but heard a noise; that he turned around and saw Staffieri and the ladder lying on the deck.

8. Also, in his opening, stevedore's counsel (Mr. Glynn) stated " * * * he [Staffieri] ascended the long ladder without incident, stepped on the rail and then the moment he touched his foot on the small ladder out it went * * * it went out from under him." The court: "And that is what caused the accident to him?" Mr. Glynn: "Yes, your Honor."

Moreover, the stevedore did not contend that when the ladder slipped from under Staffieri it was lashed. Shipowner's photographs, which it was stipulated showed the condition of the ladder at the time of the accident,[9] left no doubt that the small ladder was unlashed.[10] As above stated, the stevedore defended on the theory that the ladder became unlashed such a short time before the accident that the stevedore did not and could not have notice of this unsafe condition.

Although the court found for the stevedore on the question of notice, we find it difficult to believe that the speculation and doubts that characterized the court's subsidiary findings did not permeate its thinking on the very crucial issue of notice. This seems quite apparent from the following excerpt which appears near the end of the court's opinion:

"Respondent argues that the absence of lashing would be a condition so obvious that it should be noticed immediately. But this again assumes, without proof, that there was no lashing at all on the ladder."

■■ Under these circumstances we cannot escape the conclusion that the court's disregard of the photographs and the admissions above mentioned, adversely affected its finding on the notice issue. Also, we note that the court made no findings at all on the question of whether the absence of a handrail in any way contributed to or was a cause of the accident. The shipowner was entitled to a finding on this important part of its case. Fed. R.Civ.P. 52(a). We voice no opinion as to this or any other factual issue in the case, but we feel compelled to regard the

present findings inaccurate and inadequate.

The judgment of the district court is vacated and the case remanded for a new trial not inconsistent with this opinion.

9. At the beginning of the trial the following colloquy took place:

The Court: "Have you got some photographs of these ladders?"

Mr. Zobel (shipowner's counsel): "Yes, * * *"

The Court: "Can you mark this now as an exhibit of some party?"

Mr. Glynn: "Surely."

Mr. Zobel: "* * * Mr. Staffieri's accident, namely the condition of the short ladder at the time of the acci-

dent, the short ladder being unlashed."

Mr. Glynn: "It is true that the ladder was essentially as is indicated in the photographs. * * * I have no reason to believe that the photographs do not correctly represent the condition of the ladder. * * * The nature of the ladder is such * * * that if the ladder were not lashed it would go down immediately * * *."

10. These exhibits also show there was no handrail on this ladder.